**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TYLIK HUNTER,

                            Plaintiff,

    - v -                                                  9:20-CV-65
                                                               (LEK/DJS)
A. ROUSE, *ORC Counselor; Greene*
*Correctional Facility* and C. PUTNAN,
*Correction Officer; Greene Correctional Facility*,

                            Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

TYLIK HUNTER
Plaintiff *Pro Se*
18-B-0977
Coxsackie Correctional Facility
Box 999
Coxsackie, New York 12051

HON. LETITIA JAMES                    NICHOLAS LUKE ZAPP, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Tylik Hunter brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants used excessive force in violation of his Eighth Amendment rights and denied him his First Amendment right to free exercise of religion. Dkt. No. 1, Compl. On initial review of the Complaint pursuant to 21 U.S.C. §§ 1915(e)

& 1915A, the District Court permitted Plaintiff's claims against Defendants Rouse and Putnan to proceed, and dismissed Plaintiff's claims against Defendant Gonzales. Dkt. No. 10, pp. 5-6. Presently before the Court is a Motion to Dismiss from Defendants Rouse and Putnan, filed pursuant to FED. R. CIV. P. 12(b)(6), on the grounds that (1) Plaintiff failed to exhaust his administrative remedies prior to commencing this action, and (2) Plaintiff's First Amendment Free Exercise claim fails as a matter of law. Dkt. No. 17-1, Defs.' Mem. of Law. Plaintiff has filed an opposition to the Motion. Dkt. No. 19, Pl.'s Opp.

## I. FACTUAL BACKGROUND[1]

Plaintiff was incarcerated at Greene Correctional Facility when, at an unspecified date and time, Plaintiff claims Defendants "threw [him] up on the wall" and "beat and stomped on [him] while hand-cuffed." Compl. at p. 4.[2] Then, Defendant Putnan "sprayed a half can of ma[c]e all over [Plaintiff's] hair and face." *Id.* During this incident, Plaintiff asserts Defendants "snatched [his] kufi off [his] head and spit on it," then "began stepping on [his] kufi." *Id.* Plaintiff is presently incarcerated at Coxsackie Correctional Facility where he filed his Complaint. *See generally id.*

## II. STANDARD OF REVIEW

In considering a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020) (quoting

---

[1] The facts here are derived from Plaintiff's Complaint and are stated in the light most favorable to him.

[2] Citations to the Complaint are made to the pagination assigned by the Court's CM/ECF system.

*Ashcroft v. Iqbal*, 556 U.S. 661, 679 (2009)). Mere legal conclusions, on the other hand, are not entitled to this assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. at 679; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679. The Court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009).

While the factual allegations alleged in the Complaint need not be detailed, they still "must be enough to raise a right to relief above the speculative level," and "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 &570. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct." *Lynch v. City of New York*, 952 F.3d at 75 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556).

3

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Nevertheless, a complaint from a *pro se* plaintiff must still "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

### III. DISCUSSION

#### A. Exhaustion under the Prison Litigation Reform Act

Defendants move for dismissal, in part, on the ground that Plaintiff failed to properly exhaust his administrative remedies prior to commencing this action. Defs.' Mem. of Law at pp. 3-7.

*1. The Grievance Process*

The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial

discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016); *see Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, the defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. 7 N.Y.C.R.R. § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the CORC makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter*

*alia, Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a *bona fide* case of harassment. *Id.* at §§ 701.8(b) & (c).

### 2. Plaintiff's Failure to Exhaust his Claims

In this case, it is undisputed that Plaintiff did not file a grievance regarding the facts alleged in his Complaint and therefore did not exhaust his administrative remedies. Compl. at p. 2. Plaintiff concedes in his Complaint that there is a grievance procedure in place at Coxsackie C.F., but that he did not file a grievance. Compl. at pp. 2-3.

### 3. Whether Plaintiff's Failure to Exhaust his Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where

6

the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Martin v. Wyckoff*, 2018 WL 7356771, at *5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019).

Plaintiff alleges in his Complaint that he did not file a grievance because he feared retaliation from Defendants. Compl. at p. 3 "Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable." *Thompson v. Kelly*, 2019 WL 2374119, at *4 (N.D.N.Y. Apr. 4, 2019), *report and recommendation adopted*, 2019 WL 2371607 (N.D.N.Y. June 5, 2019) (internal quotation marks omitted) (citing *Ross v. Blake*, 136 S. Ct. at 1860, n.3). This "inquiry is an objective one[.]" *Adams v. O'Hara*, 2019 WL 652409, at *5 (N.D.N.Y. Feb. 15, 2019) (footnotes omitted). "The fear of retaliation must be 'reasonable' to render the grievance procedure 'unavailable.'" *Chaney v. Vena*, 2017 WL 6756645, at *4 (N.D.N.Y. Nov. 29, 2017), *report and recommendation adopted*, 2017 WL 6734186 (N.D.N.Y. Dec. 29, 2017) (citations omitted); *Galberth v. Durkin*, 2014 WL 7409915, at *7 (N.D.N.Y. Dec. 31, 2014); *see Thomas v. Cassleberry*, 2007 WL 1231485, at *2 (W.D.N.Y. Apr. 24, 2007). However, a mere "generalized fear of retaliation" is insufficient to excuse a failure to exhaust. *Davis v. Doe*, 2017 WL 8640829, at *4 (N.D.N.Y. Dec. 29, 2017), *report and recommendation adopted*, 2018 WL 1582230 (N.D.N.Y. Mar. 27, 2018); *see Thompson v. Kelly*, 2019 WL

7

2374119, at *4; *Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) ("[P]laintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance concerning these matters.").

Here, Plaintiff alleges more than a generalized fear of retaliation. In his Complaint, Plaintiff alleges Defendant Rouse told him that if he told "anyone what happened, the next time [Plaintiff] won't walk away." Compl. at p. 3. This is a specific threat of retaliation from Defendant Rouse to Plaintiff. *Galberth v. Durkin*, 2014 WL 7409915, at *8 (holding Defendants' threats that Plaintiff would be beaten within an inch of his life if he told anyone about the alleged assault was more than a generalized fear of retaliation and excused Plaintiff's failure to exhaust). Consequently, based on the record before the Court at this stage of the case and viewing the allegations in the light most favorable to Plaintiff, his specific allegations that he feared retaliation were sufficiently reasonable to render administrative remedies unavailable. *See Thomas v. Cassleberry*, 2007 WL 1231485, at *2 ("[P]laintiff has alleged enough to show that ordinary grievance procedures were not available to him because of his reasonable fear of retaliation.").

Defendants rely on *Salmon v. Bellinger*, 2016 WL 4411338 (N.D.N.Y. July 5, 2016), *report and recommendation adopted*, 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016), and *Pridgen v. Beatie*, 2018 WL 1402049 (N.D.N.Y. Jan. 17, 2018), to establish Plaintiff's fear of retaliation was simply a generalized fear and thus insufficient to render the grievance procedure unavailable. Defs.' Mem. of Law at pp. 6-7. However, these cases are distinguishable from the present matter in two ways. First, they were both decided on a motion for summary judgment, which entailed a different standard of review

8

and a more developed record.  Second, the plaintiffs' fear of retaliation in *Salmon* and *Pridgen* was determined to be generalized because occurrences after the specific threats were made by the defendants contradicted the plaintiffs' allegations of fear.

In *Salmon*, the inmate-plaintiff alleged an assault by the officer-defendant and claimed he made a specific threat that he would retaliate against him if the plaintiff filed a grievance.  *See Salmon v. Bellinger*, 2016 WL 4411338, at *4.  The plaintiff was then transferred and stated his reason for not filing a grievance at the new facility was that he thought the officers at his previous and current facilities might be communicating with each other, and that the officers at the new facility might retaliate on behalf of the defendant.  *See id.* at *5.  The court found plaintiff's fear at the new facility to be "nothing more than a 'generalized fear of retaliation[.]'"  *Id.* (citing *Brown v. Napoli*, 687 F. Supp. 2d at 297).  While discussing the plaintiff's claim that defendant made a specific threat to retaliate against him, however, the court stated that such a claim "would be sufficient to create an issue of material fact as to whether administrative remedies were available" at his previous facility.  *Id.* at *4.

In *Pridgen*, the plaintiff argued his fear of retaliation was justified to excuse his failure to exhaust because the defendant and other corrections officers gave him the impression that filing a grievance would get him a punch in the eye.  *See Pridgen v. Beatie*, 2018 WL 1402049, at *8.  He also alleged he was specifically told by officers not to report his injuries.  *Id.*  Despite these threats, however, the plaintiff still attempted to file a grievance.  *See id.*  Consequently, the court found the plaintiff's contention that the

9

grievance process was unavailable to him because of this fear of retaliation was "belied by his conduct after the incident." *Id.*

It is therefore recommended that Defendants' motion based on failure to exhaust be denied at this time. This does not, however, preclude a later finding that Plaintiff did not exhaust on a subsequent dispositive motion after some discovery has occurred.

## B. Free Exercise of Religion Claim

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). "A prisoner's First Amendment rights, however, are '[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system.'" *Gilliam v. Baez*, 2017 WL 476733, at *4 (S.D.N.Y. Feb. 2, 2017) (quoting *Ford v. McGinnis*, 352 F.3d at 588). "Accordingly, a prisoner's free exercise claims are 'judged under a reasonableness test less restrictive than ordinarily applies to alleged infringements of fundamental constitutional rights.'" *Id.* (quoting *Ford v. McGinnis*, 352 F.3d at 588).

"To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." *Barnes v. Furman*, 629 Fed. Appx. 52, 55 (2d Cir. 2015).[3] There is a substantial burden "where

---

[3] "[T]he Second Circuit has not decided whether the substantial burden test continues to apply [in a free exercise claim], but has nonetheless required that a prisoner 'show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" *McLeod v. Williams*, 2020 WL 2512164, at *3 (S.D.N.Y May 15, 2020) (quoting *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014)). Because we have no further guidance from

'the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thomas v. Waugh*, 2015 WL 5750945, at *10 (N.D.N.Y. Sept. 30, 2015) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). Specifically, "[t]he relevant question in determining whether [Plaintiff's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [Plaintiff's religious] practice . . . ." *Ford v. McGinnis*, 352 F.3d at 593-94. Furthermore, "[t]he government's interference with plaintiff's exercise of religion must be 'more than an inconvenience,' and must rise to the level of 'burden[ing] a belief central to plaintiff's religious doctrine.'" *Shapiro v. Cmty. First Servs., Inc.*, 2014 WL 1276479, at *10 (E.D.N.Y. Mar. 27, 2014) (alterations in original) (quoting *Alameen v. Coughlin*, 892 F. Supp. 440, 448 (E.D.N.Y. 1995)). "If the plaintiff satisfies the burden of showing that 'the disputed conduct substantially burden[ed] his sincerely held religious beliefs,' then the defendant 'bear[s] the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *McLeod v. Williams*, 2020 WL 2512164, at *4 (S.D.N.Y. May 15, 2020) (alterations in original) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006)). Still, "the burden remains with the prisoner to 'show that these [penological] concerns were irrational.'" *Ford v. McGinnis*, 352 F.3d at 595 (alterations in original) (quoting *Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989)); *Salahuddin v. Goord*, 467 F.3d at 275.

---

the Second Circuit as to whether the substantial burden requirement still applies, and neither party disputes its applicability in this case, the Court will address the substantial burden element.

11

Defendants contend that Plaintiff does not allege his beliefs were substantially burdened when, as Plaintiff asserts, Defendants pulled his kufi off his head and proceeded to spit and step on it. Defs.' Mem. of Law at pp. 8-9. While Plaintiff does not specifically allege in his Complaint that these actions substantially burdened his religious beliefs, the Court believes his claim is nevertheless sufficient to survive a Motion to Dismiss.

Plaintiff has stated he is Muslim and wears his kufi because of his religion. Pl.'s Opp. He has also asserted facts that plausibly suggest his sincerely held religious beliefs were substantially burdened insofar as he was denied his chosen method of religious practice, the wearing of his kufi, by Defendants' actions. *Id*. Thus, it would be premature to dismiss his claim without permitting further discovery on the matter to determine its viability. *See McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004) ("Dismissing McEachin's complaint without requiring an answer from defendants, or permitting further discovery to determine, for example, whether denying McEachin properly blessed food . . . significantly impeded his religious observance, makes it impossible to evaluate the validity of his First Amendment claim."); *Malik v. City of New York*, 2015 WL 3345317, at *12 (S.D.N.Y. Aug. 15, 2015), *report and recommendation adopted*, 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012) ("Malik's allegations that he practices Islam and that [the officers] ripped up and destroyed his sacred Quran states a legally sufficient claim under . . . the Free Exercise Clause . . . ."); *Thomas v. Waugh*, 2015 WL 5750945, at *10 (holding that plaintiff asserted facts sufficient to plausibly suggest on a motion to dismiss his sincerely held religious beliefs were substantially burdened by defendant's refusal to permit him to wear a larger head covering to honor both his Jamaican heritage

and Jewish faith); *JCG v. Ercole*, 2014 WL 1630815, at *23 (S.D.N.Y. Apr. 24, 2014), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014). Furthermore, Defendants have offered no legitimate penological objective that might justify their conduct. *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) ("[I]t [is] incumbent upon prison officials to make such a showing in order to prevail on a motion to dismiss."); *JCG v. Ercole*, 2014 WL 1630815, at *23 (holding that while the plaintiff offered few details in support of his assertion that the defendants denied him access to religious services, his complaint was sufficient to survive a motion to dismiss, "particularly given that Defendants offer[ed] no legitimate penological objective that might justify such a denial.").

Defendants also assert that Plaintiff's claim warrants dismissal because he did not allege the kufi was related to his religious beliefs, nor identify a date or time the incident occurred, or for how long he was deprived of his Free Exercise rights. Defs.' Mem. of Law at pp. 8-9. However, in construing this *pro se* plaintiff's Complaint liberally on a Motion to Dismiss, the Court finds Plaintiff's factual allegations to be "enough to raise a right to relief above the speculative level." *Torres v. Carry*, 672 F.Supp.2d 338, 342 (S.D.N.Y. 2009) (quoting *Atlantic Bell Corp. v. Twombly*, 550 U.S. at 555).

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 17) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   September 17, 2020
        Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).